More et al., Appellant, *v.* Peoples Bank and Trust Co. et al.

Argued April 13, 1931.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM, BALDRIGE and DREW, JJ.

*Henry C. Baur,* and with him *Robert J. Firman,* for appellant.

*Charles F. Haughney,* and with him *Wilbur R. Seabrook* and *J. B. Haughney,* for appellee.

Opinion by Cunningham, J., July 8, 1931:

Appellant, Adelaide More, seventeen years of age, is the granddaughter and next of kin of W. W. Jones. On March 9, 1926, Jones executed and delivered to the Peoples Bank and Trust Company a conveyance of all his real and personal estate in trust for the purposes therein stated. The trustee performed its duties under the deed of trust until March 14, 1927, upon which date Jones died, intestate, and letters of administration were granted to Jason G. More, his son-in-law and the father of appellant. By a decree of the common pleas of Erie County, sitting in equity, entered June 18, 1928, and subsequently affirmed by the Supreme Court (297 Pa. 252), the deed of trust was cancelled, upon the ground that it had been procured by fraud and undue influence; the trustee was directed "to deliver and account for all of the property of the said W. W. Jones, deceased, in its custody or control to his legal representative ...... for administration according to law." The estate consisted of a tract of land in the State of Washington, value not specified, and certain certificates of deposit, Liberty bonds, notes and mortgages, scheduled at $10,796. Pursuant to the decree the trustee filed its account November 8, 1928, in the common pleas, in which it accounted for unconverted securities in its possession, aggregating $9,246 and for income and converted securities to the amount of $2,652.40. The credits claimed aggregated $2,319.01, leaving a cash balance of $333.39. Jason G. More, as administrator of the estate of Jones and as the father and next friend of appellant, filed exceptions to the account and this appeal is from an order of the court below, dated February 3, 1931, dismissing the exceptions and confirming the account.

The only assignments pressed at the argument are

based upon the following three credits claimed by the trustee and thus stated in its account:

"2-24-28    Dr. A. H. Roth Prof. Services and Expert Testimony ........ $50.00

"    Dr. J. B. Howe Expert Testimony ...................... 25.00

"    Charles F. Haughney and W. R. Seabrook, attorney services for trial of case and preparing and stating account .............. 375.00"

A brief reference to the history of the litigation which terminated in the cancellation of the deed of trust is essential to an understanding of the grounds upon which the exceptions were based. W. W. Jones, at the time of its execution, was seventy-five years of age and had been a widower for some years. After his wife's death he lived with his son-in-law, More, for a short time but controversies arose and he went to board with different families for various periods of time. In March, 1926, he was living with Mrs. L. B. Smith and her husband. Shortly after going to their home Jones was taken by Mrs. Smith to her attorney, W. R. Seabrook, Esq., to arrange for the drafting of a deed of trust. Negotiations were opened with the Security Trust Company with relation to having it act as trustee but its officers, after investigation, declined to accept the trust and the Peoples Bank and Trust Company was then selected. The deed irrevocably conveyed the real estate to the trustee and transferred to it all securities belonging to Jones in trust to pay him $25 per month "for the providing of necessary and proper wearing apparel" and to pay Mrs. L. B. Smith $15 per week "for the board and lodging" of the grantor during his lifetime. Authority was given to use such part of the principal as might be necessary under certain specified conditions. The trustee was authorized and empowered to sell

the real estate and convert the securities; upon the death of the grantor the trustee was directed to pay his funeral expenses and to pay Adelaide More, appellant, if she should then be living, the sum of $200, and $500 to George D. Giddings "for past favors." It was then provided that the trustee should pay "all the rest, residue and remainder of the funds in its hands, and turn over any personal property ...... which shall not have been sold, ...... to Mrs. L. B. Smith ...... or her heirs, and ...... deed to [her] any real estate" remaining unsold. Shortly after the death of Jones the bill in equity was filed in behalf of appellant against the trustee, Mrs. Smith and Giddings, charging that "at the time of the execution of the said deed of trust, the said W. W. Jones was in a weakened mental and physical condition and was utterly incompetent to transact business of any sort or nature whatsoever, and while in said weakened condition, was persuaded and induced by the said Mrs. L. B. Smith and George D. Giddings, to execute the said deed of trust, [and] that said transfer and conveyance was without any valid or lawful consideration and was obtained by fraud upon the said W. W. Jones by said Mrs. L. B. Smith, and George D. Giddings." Answers, practically identical, were filed by each of the three defendants and the case came on for trial. W. R. Seabrook and Charles F. Haughney, Esqs., appeared jointly for the defendants, including the trustee. In the present appeal it was stipulated and agreed "that at the trial there were forty-six witnesses examined, covering two hundred and forty-three printed pages of testimony taken at four hearings before the court; that briefs of law were prepared and an oral argument made before the chancellor and another oral argument made before the court in banc. That on appeal to the Supreme Court paper books were prepared and the case presented to the Supreme

Court at Philadelphia and oral arguments made by attorneys for both sides." Doctors Roth and Howe were among the witnesses called by the defendants and each expressed his opinion, based upon an examination of Jones, with respect to his competency to transact business at the time of the execution of the deed.

The conclusions of the chancellor were thus expressed in the opinion filed by him in support of the decree nisi: "We have no hesitation in saying that under the evidence in this case we conclude that Jones was in a weakened mental and physical condition and utterly incompetent to transact business of any sort or nature at the time of the execution of the deed of trust; and, further, that he was under the domination, influence, and control of Mrs. Smith and Mr. Giddings." The final decree, entered by the court in banc, directed Mrs. Smith to pay the costs and she was the only defendant appealing from that decree. In the opinion of the Supreme Court, affirming the action of the court below and dismissing her appeal at her costs, will be found a detailed statement of Jones' incapacity and of the manner in which he was unduly influenced to transfer his entire estate to strangers.

The question with which we are now concerned relates to the right of the trustee, under all the circumstances here present, to engage medical experts and employ counsel, at the expense of the trust estate, in an effort to sustain the validity of the trust deed. There is no suggestion that the trustee was a party to the fraud, but it is contended by appellant that the medical and legal services for which the trustee was allowed credit were rendered primarily for the benefit of Mrs. Smith; that the trustee, therefore, was not entitled to pay for them out of the funds which came into its possession as a result of the imposition and fraud practiced by her upon the grantor; and that Mrs. Smith, rather than the heir at law, should pay for these services. Par-

ticularly, it is urged that the trustee could have no proper interest, after the findings and decree of the court below, in furnishing counsel to prepare and argue her sole appeal in the Supreme Court. As observed by the court below, the fees are "modest in amount," but it is clear from the stipulation above quoted that a considerable part of them must have been for services in connection with Mrs. Smith's appeal. Moreover, as appears from the opinion of the Supreme Court, Mr. Seabrook was Mrs. Smith's attorney and she took Jones to him to have the trust deed prepared. He conducted the negotiations, first with the Security Trust Company and later with the Peoples Bank and Trust Company, which resulted in the creation of the trust. Granting that this trustee may have owed to the beneficiaries under the trust the duty of upholding it against attack (Mead v. Sherwin et al., 275 Pa. 146, 155, and cases there cited), it does not follow that it was its duty to employ counsel to prosecute an appeal to which it was not a party.

Several members of this court feel, in view of such authorities as Dougherty's Appeal, 6 Sadler 69, 78, and Titlow's Estate, 163 Pa. 35, 39, that the trustee was not justified in making any of the challenged expenditures out of the trust fund, but a majority are of opinion that it was warranted in paying the medical experts and is entitled to credit for so much of the item for counsel fees as was earned in the trial of the case in the court below up to the entering of the final decree therein.

The first and second assignments were withdrawn; the third and fourth, relating to the fees paid the medical experts, are dismissed; and the fifth and sixth, based upon the credit claimed for counsel fees, are sustained to the extent herein indicated.

The seventh exception filed in the court below is re-

instated and the record is remitted with instructions that this exception be sustained as to such part of the item of $375 as may be found by the court below to be applicable to the professional services rendered in taking and arguing the appeal.